IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEN P.,[1]

                       Plaintiff,

           v.

ANDREW M. SAUL, Commissioner of
Social Security,

                     Defendant.

Case No. 6:19-cv-01716-SB

**OPINION AND ORDER**

_____

**BECKERMAN, U.S. Magistrate Judge.**

Alen P. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court reverses the Commissioner's decision and remands for an award of benefits.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born in February 1965, making him fifty years old on August 24, 2015, the alleged disability onset date. (Tr. 29, 85.) Plaintiff completed the eighth grade and did not receive either a GED or a high school diploma. (Tr. 41, 233.) Plaintiff completed truck driving school in 1987 and has past work experience as an auto dismantler, crane operator, and truck driver. (Tr. 41-42, 233.) In his applications, Plaintiff alleges disability due to a back injury. (Tr. 232.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on January 9, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 143.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on July 25, 2018. (Tr. 38-75.) On November 1, 2018, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 22-30.) On August 30, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the

PAGE 3 – OPINION AND ORDER

claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 22-30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 24, 2015, the alleged disability onset date. (Tr. 25.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairment: "degenerative disc disease[.]" (Tr. 25.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 25.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to the following limitations: (1) Plaintiff can "occasionally balance, stoop, crouch, kneel, and crawl," (2) Plaintiff can "never climb ladders, ropes, or scaffolds," and (3) Plaintiff "can have no exposure to extreme vibrations." (Tr. 25.) At step four, the ALJ concluded that Plaintiff was not disabled because he retained the RFC to perform his past relevant work as a crane operator and tractor trailer truck driver. (Tr. 28.) The ALJ made an alternative step five finding that other work existed in significant numbers in the national economy that plaintiff could perform, including work as: (1) an alarm investigator, (2) a housekeeping cleaner, and (3) a machine operator. (Tr. 72.)

## DISCUSSION

Plaintiff argues on appeal that the ALJ erred by failing to provide: (1) specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; and (2) specific and legitimate reasons for discounting the opinion of Plaintiff's treating physician, Mark Mueller ("Dr. Mueller"). As explained below, the Commissioner's decision is based on harmful legal

error and not supported by substantial evidence. The Court concludes that Plaintiff satisfies the credit-as-true standard, and therefore remands for an award of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

///

///

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 26, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to do so here.

#### 1.    Daily Activities

The ALJ discounted Plaintiff's testimony based on his daily activities. (*See* Tr. 27, "[t]he claimant's allegations of disabling symptoms are inconsistent with his daily activities"). In support of this finding, the ALJ noted that Plaintiff reported "normal activities of daily living" in his 2016 adult function report, "including walking his dogs a couple of times a day." (*Id.*) In addition, the ALJ noted that Plaintiff testified that he "drives regularly," he is "able to cook for himself, although his wife does most of the cooking," he is "able to go grocery shopping, but his legs bother him," and "he takes no pain medications." (Tr. 27.) Plaintiff argues that his reported activities were not inconsistent with his alleged limitations. (Pl.'s Opening Br. at 10-12.) The Court agrees.

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." (citing *Light*, 119 F.3d at 792)). "Daily activities may also be 'grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving

the performance of physical functions that are transferable to a work setting.'" *Ghanim*, 763 F.3d at 1165. (citation omitted).

In this case, the activities cited in the ALJ's decision do not contradict Plaintiff's testimony. Although Plaintiff reported that he walks his dog a few times a day, he indicated that his walks consist of half a block and back. (*See* Tr. 56, testifying that "nine months ago I could have walked my dog two blocks" but an increase in symptoms has further limited his mobility). Contrary to the ALJ's findings, these reports are consistent with Plaintiff's 2016 adult function report and other evidence in the record. (*See* Tr. 263, noting in his adult function report that he could walk for four blocks at a time and would need to rest after ten minutes; Tr. 511, reporting to his doctor on July 12, 2016, that "he can walk three or four blocks, then the pain forces a rest"; Tr. 370, a treatment note dated June 16, 2016 indicating that he "has to walk his dogs a couple of times per day" but "[i]f patient walks greater than two blocks, he will have increased pain"; Tr. 447, Plaintiff's physical therapist noting that he "is in a lot of pain in hips and back and notes that he did a lot of walking yesterday (about 8-10 blocks)" and that "he was a 'good 10/10' pain level today when he woke up"; Tr. 450, stating he "currently walks a block each day"; Tr. 689, Plaintiff's doctor indicating in a June 25, 2018 medical source statement that he can only walk half a city block without rest or severe pain; Tr. 693, Plaintiff's surgeon noting that "[h]e can walk half a block when the pain stops him").

The Commissioner argues that Plaintiff's dog walking contradicts his alleged limitations because he "testified he could not bend or twist" and walking a dog "includes bending to connect leashes and twisting as the dogs run about." (Def.'s Br. at 5.) However, Plaintiff did not testify at the hearing that he can never bend or twist. Rather, he testified that if he twists too quickly he experiences pain, and that bending is sometimes difficult for him. (*See* Tr. 55, "if I go to twist

one way or another too fast . . . it's just like an electrical shock in my back" and "[b]ending, sometimes I'm okay, sometimes it's a shock factor"). Accordingly, Plaintiff's ability to walk his dog was not a clear and convincing reason to reject his subjective symptom testimony.

In discounting Plaintiff's testimony, the ALJ also noted that Plaintiff testified that he drives regularly, but the ALJ mischaracterized Plaintiff's testimony. Plaintiff did not testify as to the frequency of his driving. Rather, when the ALJ asked if he drives regularly, Plaintiff responded, "[i]f I go anywhere, its right straight to the place and back, no extra time anywhere." (Tr. 62.) Plaintiff also testified that a recent drive to a medical appointment was "rough," that "the car was uncomfortable," and that he would be unable to work as a truck driver again if it required him to sit all day long. (Tr. 61; *see also* Tr. 54, "I don't know if I could take the beating in the truck. That would be a factor. I don't think I could handle the bouncing and beating of the trucks."). Plaintiff's proffered symptoms are not inconsistent with occasional driving. Plaintiff testified that his symptoms limit him to standing and walking for ten minutes and that he has to "move around" to alleviate the pain in his back and legs. (Tr. 59.) The ALJ failed adequately to explain how the fact that Plaintiff drives, yet still experiences symptoms, is inconsistent with his claimed limitations, and therefore the ALJ's reliance on Plaintiff's driving to discredit his testimony was misplaced. *See Boone v. Astrue*, No CV 12-4007-SH, 2013 WL 247559, at *6 (C.D. Cal. Jan. 23, 2013) (concluding that the ALJ erred in relying on the claimant's testimony that she could drive and occasionally go shopping when "[t]here was no evidence or testimony evoked regarding how long Plaintiff could engage in these activities" and that such activities did not wholly contradict her testimony that "she feels numbness and stiffness in her hands, wrists, back, and legs, increasing pain in her hips and back, and that she can walk ten to fifteen minutes at time"); *cf. Ross v. Berryhill*, 711 F. App'x 384, 386 (9th Cir. 2017) ("[T]he ALJ failed to

identify specific symptom testimony the ALJ found to be inconsistent with Ross's reported activities of daily living, and the symptom testimony the ALJ mentioned did not contradict Ross's own account of her activities of daily living.") (citations omitted).

The ALJ also discounted Plaintiff's testimony on the grounds that he is able to cook and go grocery shopping, however the basis for the ALJ's finding is unclear. Indeed, the ALJ acknowledged that "[Plaintiff's] wife does most of the cooking" and that "his legs bother him" while he shops. (Tr. 27; *see also* Tr. 260, reporting that he makes "sandwiches" and prepares "can foods" but does not like "to cook for one"; Tr. 63, testifying that "I'm not doing the cooking" and that Plaintiff grocery shops "a little bit" but "if I spend too much time in the store on my legs, I have to stop in there and take a break"). Contrary to the ALJ's findings, Plaintiff's limitations in performing these activities are consistent with his self-reported symptoms.

Finally, the ALJ also discounted Plaintiff's testimony because he "takes no pain medications." (Tr. 27.) Plaintiff argues that he takes Gabapentin along with over-the-counter analgesics for pain, but that he was avoiding narcotic pain medication due to his fear of becoming addicted. (Pl.'s Opening Br. at 11.) To be sure, Plaintiff testified at the hearing that he was not currently taking pain medication because "he will not take anything that's going to be habit forming." (Tr. 63.) Further, a review of the record indicates that Plaintiff consistently took Gabapentin for pain, as well as over-the-counter medication. (*See, e.g.*, Tr. 234, 263, 272, 288-89, 387, 417, 422, 433, 435, 451, 485, 663, 670; *but see* Tr. 57, noting that a year after his surgery in 2016 he "did very well" and was on "no medication" before his symptoms worsened again approximately one year later). The ALJ never connected the medical record to Plaintiff's testimony regarding his use of medication, nor did she address Plaintiff's justification for not taking stronger pain medication. Therefore, Plaintiff's failure to use narcotics to treat his pain

was not a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony.

The Commissioner also argues that Plaintiff's claim of disabling symptoms as of August 24, 2015 is undermined by his report on July 12, 2016 that he spent time looking for light work. (Def.'s Br. at 5.) The ALJ did not cite this as a reason to reject Plaintiff's testimony, and the Court is "'constrained to review [only] the reasons the ALJ asserts.'" Burrell, 775 F.3d at 1141 (citation omitted); see also Drake v. Colvin, No. 15-1250, 2016 WL 4608227, at *7 (N.D. Cal. Sept. 6, 2016) ("Long-standing principles of administrative law require [a court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (quotation marks and citations omitted).

The daily activities the ALJ cited neither contradict Plaintiff's subjective symptom testimony nor establish that he can spend a substantial part of his day performing activities that are transferable to a work setting. Accordingly, Plaintiff's reported activities do not present a clear and convincing reason for discounting his testimony. See, e.g., Ragudo v. Saul, 411 F. Supp. 3d 1125, 1136 (S.D. Cal. Sept. 30, 2019) ("[T]he mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001))).

### 2.    Conflicting Medical Evidence

The ALJ also discounted Plaintiff's testimony on the ground that it conflicted with the objective medical evidence. (See Tr. 22, finding that Plaintiff's statements are "inconsistent with . . . the medical evidence"; see also Def.'s Br. at 5-6, arguing that the medical record "contradicted the stated severity of Plaintiff's symptoms"). The Ninth Circuit has held that it is

appropriate to discount a claimant's testimony based on inconsistencies with, among other things, "the objective medical evidence[.]" *Eblen v. Saul*, 811 F. App'x 417, 420 (9th Cir. 2020) (citing *Tommasetti*, 533 F.3d at 1039).

However, an ALJ may not reject a claimant's pain testimony merely because the testimony appears disproportionate to the objective medical evidence. *See Burch*, 400 F.3d at 680 ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain"). Here, the only other reason cited by the ALJ to doubt Plaintiff's testimony is its inconsistency with his activities of daily living. (Tr. 25-27; *see also* Def.'s Br. at 4-6, acknowledging that the ALJ discounted Plaintiff's subjective symptom testimony due to alleged inconsistencies with his reported activities and the medical evidence in the record). As discussed above, the Court concludes that the ALJ erred in discounting Plaintiff's testimony based on his daily activities. Thus, even if the objective medical evidence is inconsistent with Plaintiff's proffered symptoms, the ALJ cannot rely on a lack of objective medical evidence as the sole reason to discredit his testimony. *See Taylor v. Berryhill*, 720 F. App'x 907, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted). Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

///

II.     **MEDICAL OPINION EVIDENCE**

A.      **Applicable Law**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

B.      **Analysis**

Plaintiff argues that the ALJ failed to provide a legally sufficient reason for discounting the opinion of his treating doctor, Dr. Mueller. The Court agrees.

Dr. Mueller served as Plaintiff's treating physician beginning in September 2015, and he met with Plaintiff approximately twenty times over a three-year period. (Tr. 363, 688.) On June 25, 2018, Dr. Mueller completed a Lumbar Spine Medical Source Statement. (Tr. 688-91.) Dr. Mueller stated that Plaintiff has been diagnosed with lumbar radiculopathy, Hepatitis-C, edema, and nephrolithiasis; Plaintiff experiences pain, leg weakness, inability to sit or stand, inflexibility, numbness, edema, and insomnia; Plaintiff can walk half a block without rest or severe pain; Plaintiff can only sit for twenty minutes at one time and stand for thirty minutes at one time; Plaintiff could occasionally twist and climb stairs, rarely bend or squat, and never climb ladders; Plaintiff could use his hands and fingers twenty-five percent of the work day, use his arms to reach in front of his body fifty percent of the day, and reach overhead less than thirty percent of the day; Plaintiff could only sit and stand for less than two hours in an eight-hour work day; Plaintiff would need a ten-minute period every sixty minutes to walk around; Plaintiff would need to take unscheduled work breaks three to four times per day; Plaintiff would miss more than four days of work per month due to his impairments or treatment; and Plaintiff would be off task at least twenty percent of the work day. (Tr. 688-90.)

The ALJ assigned Dr. Mueller's medical opinion "little weight," finding that his opinion is inconsistent with the opinion of Plaintiff's back surgeon, Dr. Ross, and treatment notes from July 24, 2018, indicating that Plaintiff had full strength in his lower extremities, was able to tandem walk, walk on his toes and heels, and perform a deep knee bend. (Tr. 28.)

The Court agrees that Dr. Mueller's medical opinion conflicts in part with the opinion of Dr. Ross, Plaintiff's back surgeon, who indicated on November 29, 2016, a month after his lumbar surgery, that Plaintiff could begin lifting and bending, and that he could gradually resume normal activities over the next few months. (Tr. 590.) Dr. Ross also recommended that Plaintiff

"undertake a core strengthening exercise program to be supplemented with aerobic exercise,"
and that he participate in activities such as walking, swimming or bicycling. (*Id.*) Although Dr.
Ross proposed "a lifelong proscription against very heavy or awkward lifting," he noted that he
did not want Plaintiff "to be afraid to resume a normal, active lifestyle with all the physical and
mental health benefits this provides" and he did not believe that physical therapy was necessary.
(*Id.*) Due to the conflicting medical opinions, the ALJ was required to provide specific and
legitimate reasons for discrediting Dr. Mueller's opinion. *See Treasure L. v. Saul*, No. 6:19-cv-
583-SI, 2020 WL 3033669, at *4 (D. Or. June 5, 2020) ("If a treating doctor's opinion is
contradicted by the opinion of another physician, the ALJ must provide 'specific and legitimate
reasons' for discrediting the treating doctor's opinion.") (citation omitted); *see also* Pl.'s
Opening Br. at 13-14 (acknowledging that the "specific and legitimate reasons" standard applies
in this case). The ALJ failed to do so here.

As an initial matter, Plaintiff argues that Dr. Ross's treatment notes do not constitute a
medical opinion because he did not provide an opinion as to Plaintiff's functional limitations.
(Pl.'s Opening Br. at 13-15.) "Medical opinions are statements from [physicians] . . . that reflect
judgments about the nature and severity of your impairment(s), including your symptoms,
diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental
restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Here, Dr. Ross opined on Plaintiff's
physical abilities as well as his restrictions, noting that Plaintiff could engage in certain activities,
such as lifting, bending, biking, walking, and swimming, but that he should avoid heavy lifting and
other movements that would put him at high risk for recurrent problems. (Tr. 590.) Contrary to
Plaintiff's argument, Dr. Ross addressed Plaintiff's specific functional limitations and activities,

and therefore the Court cannot conclude that Dr. Ross did not provide a medical opinion as defined by the Social Security Act (the "Act"). *See* 20 C.F.R. § 404.1527(a)(1).

However, even crediting Dr. Ross's November 2016 statements as a medical opinion, the Court finds that the ALJ's use of Dr. Ross's opinion to discredit Dr. Mueller's opinion is contrary to law and not supported by substantial evidence. Although the ALJ cited Dr. Ross's post-operative instructions given to Plaintiff after his L4-5 lateral recess decompression surgery (Tr. 27), Dr. Ross's post-surgery advice to Plaintiff one month after his surgery and almost two years before Dr. Mueller's medical source statement does not constitute a legitimate reason for discounting Dr. Mueller's opinion. There is no dispute that Plaintiff's symptoms improved for approximately one year after his surgery, and therefore Dr. Ross's opinion does not conflict with Dr. Mueller's opinion with respect to Plaintiff's limitations following his post-surgery respite. (*See* Tr. 57, Plaintiff testifying that "the surgery was a success" and that "I had about a year that I did very well, no medication"; Tr. 663-64, a treatment note dated December 7, 2017 (thirteen months after Plaintiff's surgery) noting that Plaintiff "had L4 laminectomy last year and has largely been doing very well" but that "recently over the past two weeks, he had significant changes with return of back pain, numbness of legs and severe pain with lifting things"). Further, unlike Dr. Mueller, Dr. Ross never specifically addressed Plaintiff's work-related limitations. To the extent that Dr. Ross's post-surgical instructions constitute a medical opinion, it falls short of the "specific and legitimate reasons" standard to discount Dr. Mueller's opinion.

The only other reason the ALJ cited for rejecting Dr. Mueller's opinion is Dr. Ross's July 24, 2018 treatment notes, dated one day prior to Plaintiff's hearing. On that date, Dr. Ross examined Plaintiff and noted that he had full strength in his lower extremities, and he was able to tandem walk, walk on his toes and heels, and do a deep knee bend. (Tr. 590.) Although the ALJ

cited these findings, she did not explain how Plaintiff's unremarkable physical examination at a single visit contradicted Dr. Mueller's opinion based on twenty visits spanning three years. (*See* Tr. 658, a treatment note dated April 9, 2018, noting "extremity weakness, gait disturbance, [and] numbness in extremities"; Tr. 654-56, a progress note dated May 11, 2018, noting "[h]is exam is consistent with more weakness in L3, L5 pattern," and weakness "at hip flexor (strength 3/5)" and "dorsiflexion of left foot weakness 3/5"; Tr. 653, treatment notes from a May 24, 2018 examination indicating that Plaintiff is "tender to palpitation of the lumbar spine and awful pain with palpitation on the left SI joint. He has hip flexion weakness on [his] left side and he has a foot drop on the left side. Severe sensory changs [sic] in L3-L5 pattern"). Because the ALJ did not adequately explain her interpretation of the conflicting medical evidence, she did not provide a specific, legitimate reason to discount Dr. Mueller's opinion. *See Long v. Colvin*, Case No. 13-cv-05716-SI, 2015 WL 971198, at *6 (N.D. Cal. Mar. 3, 2015) ("As an initial matter, the ALJ has attempted little more here than to identify conflicting evidence. This is insufficient. As noted above, the ALJ must not only identify the conflicting information, but provide her interpretation thereof, and explain why her interpretation, rather than the treating physician's, prevails."); *see also Garrison*, 759 F.3d at 1012 (holding that an ALJ may only reject a treating doctor's opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (citation omitted). In sum, Dr. Ross's single examination note was not a specific and legitimate reason to discount Dr. Mueller's longitudinal opinion.

The ALJ also erred in her treatment of Dr. Mueller's opinion by failing to consider the factors outlined in 20 C.F.R. § 404.1527(c). When analyzing a treating physician's opinion to which the ALJ has not assigned controlling weight, the ALJ must "consider factors such as the

length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo*, 871 F.3d at 676. The ALJ did not engage in the required analysis and gave no indication that she considered these factors. *See Kelly v. Berryhill*, 732 F. App'x 558, 562-63 (9th Cir. 2018) ("[T]he ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c). . . . [H]owever, the ALJ's decision here gives no indication that the factors were properly considered, other than a cursory acknowledgement of Dr. Ratcliffe as [the claimant's] treating physician.") (citation omitted). The ALJ did not acknowledge that Dr. Mueller was Plaintiff's treating physician who had seen him more than twenty times over a period of three years. (Tr. 27.) The Ninth Circuit has held that "[t]his failure alone constitutes reversible error." *Trevizo*, 871 F.3d at 676; *see also Kelly*, 732 F. App'x at 562 ("The ALJ also erred in her treatment of Dr. Ratcliffe's opinions by failing to consider the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6) in assessing a treating physician's opinion, which we recently described as reversible legal error.") (quotation marks and citation omitted); *Ann Cox v. Colvin*, No. 15-cv-00190, 2015 WL 8596436, at *12 (N.D. Cal. Dec. 14, 2015) ("[T]he ALJ's reason is not clear and convincing, or even specific and legitimate, because he did not consider any of the factors relevant to determining which medical opinion(s) should control (the treatment relationship, frequency of examination, nature and extent of treatment relationship, evidence supporting the opinion, and the doctor's specialization). Had he engaged in this analysis, the following facts may have tipped the scale in favor of giving controlling weight to Dr. Gardner's opinion: that Dr. Gardner treated Plaintiff monthly for three years; that Dr. Gardner altered Plaintiff's treatment plan various times throughout the years; and that Dr. Gardner was familiar with both Plaintiff's mental and physical impairments.") (citation omitted).

The ALJ did not follow the appropriate methodology for evaluating a treating physician's medical opinion, and failed to provide a legally sufficient reason for rejecting Dr. Mueller's opinion. For these reasons, the Court concludes that the ALJ committed harmful error in discounting Dr. Mueller's opinion.

## III.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit- as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is appropriate.

First, the Court finds that the record has been fully developed. It includes several years of treatment notes, Plaintiff's testimony about his symptoms and limitations, and opinions from two treating doctors, Drs. Mueller and Ross, and two non-examining state physicians. (Tr. 82, 108, 590, 688-691.) Even though the ALJ concluded that Plaintiff could perform past relevant work, she nevertheless proceeded to step five and posited several hypotheticals at both the light and sedentary levels of work. (*See* Tr. 73, the ALJ asked the VE if there were any transferrable skills form the claimant's past work that would transfer to occupations at the sedentary level and the VE responded negatively.) In addition, Plaintiff's counsel asked the VE about the customary tolerances for absences in the workplace, to which the VE responded that a worker would be written up if they missed more than one-and-a-half to two days of work a month, and after three write-ups the worker would be terminated. (*See* Tr. 74.)

The Commissioner argues that this is not the "rare" case that warrants a remand for benefits because "there are outstanding issues to resolve" and "the record raises 'serious doubt' as to whether Plaintiff is disabled." (Def.'s Br. at 11.) The Court disagrees. Substantial evidence in the record supports Dr. Mueller's opinion that Plaintiff's impairments would prevent him from working full-time and maintaining regular attendance, consistent with Plaintiff's work experience prior to the alleged onset date. (*See* Tr. 43, Plaintiff testified that he only worked nine days out of twenty-seven in the month before he stopped working).

Furthermore, Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play

again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, the Court concludes that Plaintiff satisfies the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and rejecting Dr. Mueller's medical opinion. Accordingly, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because his degenerative disc disease would cause him to exceed the customary tolerance for absences. (*See* Tr. 59-60, Plaintiff testified that if he had a job that allowed him to sit and stand for eight hours he could work a full eight-hour day for "probably two, three days at the most" and then "I would have to take a break"; Tr. 691, medical source statement from Dr. Mueller opining that Plaintiff would miss more than four days of work per month due to his impairments; Tr. 74, the VE testified that "if a person was calling in sick one-and-a-half to two days or more a month they would be written up as a disciplinary action, and after three write-ups typically they're terminated").

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *Cf. Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Weirick v. Saul*,

825 F. App'x 446, 450 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "the vocational expert's testimony establishes that if the improperly discredited opinions of the treating physicians were credited as true, there would be no jobs in the national economy that she could perform and 'the ALJ would be required to find the claimant disabled on remand'" (citing *Garrison*, 759 F.3d at 1020)); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony of [the treating psychologist], the lay witnesses, and [the claimant], would be unable to perform competitive employment").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 10th day of December, 2020.

*Stacie F. Beckerman*

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge